[Lindsey v. Veasy et als.]

# Lindsey *v.* Veasy *et als.*

### *Bill in Equity to rescind Contract.*

1. *Rescision ; what will not authorize.*—Misrepresentations by third persons, whose opinions the vendee sought as to the quality and quantity of land, are not available to procure a rescision, when they were not the agents of the vendor, or acting in his interest or at his request.

2. *Entry of land from United States ; what insufficient to secure title.*—Under the revised statutes of the United States, (§ 2289, Ed. 1875,) title to land entered at a reduced rate for a homestead, cannot vest until final certificate, after proof of occupation for the prescribed period, and non-alienation during that time. One who merely entered lands and paid entrance fees for a homestead, without residing thereon or cultivating it for the period prescribed, and during that time alienated it, could not acquire any title.

3. *Conveyance ; what will not pass title.*—A conveyance of lands held adversely at the time to the grantor, especially where he has been defeated in a suit to annul the deed under which the adverse claimant held, will not pass title to the grantee, and as to lands thus adversely held, there is a breach of covenants of seizin in the deed.

4. *Rescision ; what sufficient misrepresentation to authorize.*—Where the vendor makes material false representations as to his seizin and right to convey, which deceived the vendee, and induced him to purchase lands, it is immaterial when rescision is sought, whether the representations were knowingly or ignorantly made.

5. *Rescision ; what proper case for.*—V. and L. exchange lands, each conveying by warranty deeds to the other. V. lived in a different county from L., and had never seen his lands, but contracted in reliance upon L.'s statement of title and right to convey. Part of L.'s lands were held adversely to him under a deed which he had unsuccessfully sued to have canceled. Other portions had been sold under execution against him, and as to still another portion he had no title, having entered it as a homestead, and never complied with the conditions upon which he could obtain title. The result was, that V., if he obtained title to any of the land, got title to only sixty-five acres out of two hundred, which L.'s deed professed to convey. V., after remaining in possession about a year, abandoned L.'s land, and filed his bill for rescision. *Held*—V. had a plain case for such relief, L. being insolvent.

6. *Account ; what proper statement of.*—In taking an account of rents, after a decree rescinding a contract and conveyance of lands in exchange, where complainant, in pursuance of the contract, retained possession of part of the tract sold, and also another part contrary to its terms, respondent leasing and paying rent for the part retained under the contract, respondent should not be charged with the whole rental value of the premises for the year, but is entitled to have deducted from it the amount of rents paid by him, and the value of the occupation of that portion which complainant retained contrary to the terms of the exchange.

APPEAL from Pike Chancery Court.

Heard before Hon. H. AUSTILL.

The opinion states the facts.

JOHN D. GARDNER, for appellant.

PARKS & HUBBARD, *contra.*

STONE, J.— The present controversy arose out of an exchange of lands. Lindsey conveyed to Veasy and his sisters two hundred acres of land in Jefferson county, for two hundred and eighty acres in Pike county, conveyed by Veasy and his sisters to Lindsey. Neither Veasy nor his sisters had ever seen the lands in Jefferson county prior to the purchase. Each conveyed by deed with warranty. Each party took possession under the purchase, but Veasy did not obtain possession of the entire lands purchased. At the end of a year, Veasy abandoned the possession of the lands conveyed to him and his sisters, and the present bill seeks a rescision of the contract. It charges fraud on Lindsey, first, in misrepresenting and overstating the quality, productiveness, and cultivable quantity of the Jefferson land ; second, in representing that he had title to the land, when he had no title whatever to 135 of the 200 acres ; and it charges that Lindsey was and is insolvent. The exchange of lands was made, and the deeds executed in the latter part of the year 1874. A great deal of testimony was taken, much of which, if properly objected to, would probably have been suppressed. No motion was made to suppress, and we must regard all the testimony as before us for what it is worth. On the question of Lindsey's solvency, the testimony for complainants tends to prove he had not sufficient property, above legal exemptions, to pay the value of the lands conveyed to him, while neither he, nor any of his witnesses, are interrogated, or answer as to his solvency, or ability to pay his debts. See act " to regulate property exempted from sale for the payment of debts," approved April 23d, 1873, Pamph. Acts, 64. If it were necessary to a decision of this case, we think we might infer the Chancellor came to the conclusion that Lindsey was insolvent ; and there is not enough in the record to convince us the Chancellor erred in that conclusion.

As to representations of quantity, quality and productiveness of cultivable land in the tract conveyed by Lindsey, the averment is scarcely proved. Veasy certainly traded in blind confidence, and trusted to the representations of Knight and Wilson, who had seen the land, rather than to any thing said by Lindsey. We are convinced Veasy was deceived by the representations ; but Veasy himself sought their opinions, and there is no evidence upon which we can hold Lindsey accountable for them. They are not shown to have been agents of his, nor acting at his request, nor in his interest. For aught that appears, they themselves only expressed their honest opinion.

The question of title. On one question, there is a noticeable incongruity in this record, Lindsey, in his answer,

speaking of one eighty acre tract, south half of north-east quarter of section 36, conveyed by his deed, uses the following language :   " Respondent admits that he entered a portion of the lands included in said trade, from the Government of the United States, for the use of an adjoining farm, for which he received a certificate of entry from the officer authorized by law to issue and grant the same.  He did reside upon and use said lands for more than five years continuously before said trade was made, except at such times as he was temporarily absent, but always by and through agents and tenants.  He avers that he turned over to the said John T. J. Veasy the certificate of entry, and is fully prepared and able and willing to perfect said title, when he can get his certificate so turned over by [to] John T. J. Veasy."   Lindsey, in his testimony, states that pending the negotiation with Veasy, he informed him " that he (Lindsey) had entered 80 acres adjoining farm, and had paid up the entrance money, and had received from the land office what they called a duplicate, which witness would show said Veasy; that he had never gotten any patent for said 80 acres, but would give Veasy the duplicate, and that he might draw the patent on it when presented, provided the trade was made." Knight, witness for appellant, who was present during the negotiation, testified to the same thing in substance.  The natural import of the language of these witnesses is, that Lindsey had, in the ordinary way, entered this 80 acres of land in the government land office, and had received the receiver's certificate of entry, issued in duplicate, certifying that he (Lindsey) had paid the government price for the land, which certificate, or duplicate, as it is frequently called, entitles the person to whom it is issued to a patent from the government of the United States, whenever the same is issued. This, without further payment, or further proof.  It has long been settled in this court that a certificate of entry, such as we have described, is evidence of title which will support ejectment.—1 Brick. Dig. 626, § 28.   The proof in this case by the land officers, and by many other witnesses, establishes beyond dispute that Lindsey had not entered the land, and had not received a duplicate certificate of entry. What Lindsey had in fact done, was an application under the homestead acts of congress to enter this land, at a very reduced price, for the purposes of a homestead, or adjacent farm.—See Rev. Stat. U. S., Ed. of 1875, § 2289, et seq.   No final certificate had issued to him, and he was in no condition to demand a patent.   Such final certificate could not be issued until the expiration of five years after application to enter, and then only on proof, by two witnesses, " that he,

she or they, have resided upon or cultivated the same for five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated," &c.   None of these steps had been taken, except the payment of the small sum demanded when the application for entry was first made.   Lindsey had neither resided upon the land, nor improved or cultivated any part of it; and he alienated it.   He thus put it out of his power to acquire a title to this eighty, and his covenant of seizin was broken the moment it was entered into.

There is irregular testimony, but not objected to on that account, that in a suit by appellant against the widow and heirs of James T. Lindsey, to vacate the deed to said James T., and to dispossess his widow and heirs at law, complainant failed of recovery.   It is also proved that up to the time of his death, in 1873, James T. Lindsey remained in possession and control of the 55 acres deeded to him, claiming to be the owner thereof; and that his widow remained in control thereof, claiming under the deed to her deceased husband, when Lindsey sold and conveyed to Veasy.   Under either of these conditions, Lindsey could not sell and convey a good title to said fifty-five acres, and as to this part of the tract, the covenant of seizin was broken.—*Bernstein v. Humes*, Dec. Term, 1877.   And there is irregular evidence tending to show that the remaining 65 acres of the tract have been sold by the sheriff under execution.   We do not hesitate to declare, that under the deed of Lindsey, the Veasys obtained a title to not exceeding sixty-five of the two hundred acres, if, indeed, they obtained a title to any part.   We can not affirm whether Lindsey's false representation of seizure, and right to convey, was knowingly or ignorantly made.   In the case of *Lanier v. Hill*, 25 Ala. 554, the bill charged that the misrepresentation, for which rescision was sought, was fraudulently made, and the proof probably did not go further than to show it was made by mistake.   This court said, "we do not think this makes any difference.   The misrepresentation is charged with particularity, and it is as clearly proved; and in this respect the *probata* and *allegata* correspond.   The intent with which it was made is entirely immaterial, so that the allegation of fraud was superfluous.   As the evidence as to the misrepresentation is full, and as it is equally clear the purchasers were deceived by it, and it went to the most material part of the contract, they have thus far made a case which would entitle them to a rescision of the contract." See, also, *Walton v. Bonham*, 24 Ala. 513; *Proui v. Roberts*, 32 Ala. 427; *Kelly v. Allen*, 34 Ala. 663, 669, and authorities

cited. We think this record presents a clear case for rescision.

There was an error committed in taking the account. Under the contract of exchange, Veasy retained possession of part of the Pike plantation for the year 1876. This part, so retained, was called a one-horse farm. Subsequently, Lindsey rented this part from him at a rental of $45. Part, or all of this rent, the testimony tends to show, was paid by Lindsey to Veasy; and it is also shown that the sisters of Veasy remained in, and occupied one of the houses, contrary to the terms of the exchange. One hundred dollars rental for that year is the highest value the testimony authorizes for the whole tract in its then condition. Many of the witnesses place it much below that price. There should have been deducted from the sum ascertained to be the value of the rent, the rental value, or amount paid by Lindsey as rent in 1875 for the said one-horse farm, and also the value of the use and occupation of the said house occupied by Veasy's sisters. We think $50 rent for that year is all that should have been charged against Lindsey, under the circumstances. The Chancellor should have sustained appellant's exceptions to the charge of rent for 1875. We are not inclined to disturb the Register's finding as to the other two years; and we are not inclined to increase the allowance made to Lindsey for improvements.

In one other respect the Chancellor erred. The Register had ascertained that Lindsey had paid taxes on the land amounting to $18.60. This the Chancellor decreed he was entitled to. The decree was pronounced December 8, 1877, and inasmuch as Lindsey would occupy the premises for the residue of the year, and until January 1st, 1878, the Chancellor set off this benefit that would accrue to Lindsey against his excess of claim for taxes paid, and made him no allowance therefor. Lindsey had already been charged, in the Register's account, with the rent of the premises for the entire year 1877, and should not have been charged a second time. The excess of taxes paid by Lindsey over the balance against him previously reported by the Register, is $11.60; making, in the aggregate, $61.60 charged against Lindsey, in excess of the true amount due. In re-stating the account, this must be corrected.

The Chancellor made an order, allowing the decree to be superseded by Lindsey, on his executing a bond with prescribed conditions; which order he complied with. We suppose he has remained in possession ever since. This will probably raise other questions, for the correct decision of

which we have not sufficient information. We therefore remand the cause.

Reversed and remanded, to be proceeded in according to the principles of this opinion. Let the appellees pay the costs of this appeal.