# ANNIE BAXTER, Appellant, v. JAMES WEBER.

In Banc, December 6, 1922.

1. **EQUITABLE TITLE: Entryman: Incomplete Homestead Entry.** Where the entryman in 1867 acquired at most only an inchoate title to be perfected by compliance with the homestead law with respect to residence and cultivation, he had, until such compliance, no interest, equitable or otherwise, that he could convey; and where he took none of the steps required by law to earn a patent, but on the contrary attempted to convey the land one year after he made the entry, without ever having attempted to cultivate or reside on the land, his deed conveyed nothing; and the defendant, who claims through him as the successor in title by *mesne* conveyances, cannot invoke the doctrine of equitable title against the subsequent patentee.

2. **LIMITATIONS: Thirty-Year Statute: Cancellation of Homestead Entry.** Where the entryman's homestead entry, made in 1867, was cancelled in 1873 because of his failure to comply with the law, and from that time on until the issuance of the patent to plaintiff in 1916 there was no outstanding equitable right or title in any one, the thirty-year Statute of Limitations invoked by defendant, who claims as successor in title to said entryman by *mesne* conveyances, has no application.

3. **ACTUAL SETTLER: Preference Right to Patent: U. S. Statute.** Under the Act of Congress (Sec. 2, ch. 344, p. 318, 30 U. S. Stat. at L.) declaring that all public lands in Missouri shall be sub-

Baxter v. Weber.

ject to private sale whether or not previously offered at public sale, "provided that the actual settler shall have a preference right, under such rules and regulations as the Secretary of the Interior may prescribe," a defendant who had paid a valuable consideration for the land in the honest belief that he was acquiring the title in fee, and it had been fenced and partly cleared by his immediate grantor and incorporated into the farm upon which said grantor resided, while not an actual settler within the meaning of the homestead and exemption laws, was such within the equity of said statute, and entitled to a "preference right" to the patent.

4. ———: ———: Promulgated Rule: Affidavit: Possession As Notice: Trustee for Preferred Settler. Where the statute declared that in the sale of public lands by private sale "the actual settler shall have a preference right, under such rules and regulations as the Secretary of the Interior may prescribe," and the Secretary of the Interior promulgated a rule providing that in all applications to purchase land at private sale "the applicant must furnish a duly corroborated affidavit showing that there is no one other than himself claiming said land as an actual settler," the applicant for a patent is chargeable with notice as a matter of law that another was an actual settler, where the land had been fenced and partly cleared and used as a part of a farm and thus continuously occupied by said other and his immediate grantor for nearly twenty years. The possession, being open, visible and notorious, challenged inquiry on his part; and his affidavit, corroborated by two witnesses, that the land was "not claimed by any one as an actual settler or otherwise, other than himself," whether intentionally or ignorantly made, operated as a fraud on said actual settler, and deprived him of the right to buy the land in preference to others, when he became aware that he had no title; and in equity and good conscience said land is still subject to such preferential right in the hands of the patentee, who should be compelled to convey it to such actual settler upon the payment by him of the full amount of money expended by the patentee in effecting its purchase.

5. ———: ———: Relief: Conveyance Upon Reimbursement: Not Tendered or Prayed: Amendment of Pleading. Notwithstanding a party is, under the facts, entitled to a certain relief, he cannot have it unless it comes within the scope of the pleadings. Notwithstanding the fact that the defendant in the suit to quiet title was the actual settler of the land and therefore was entitled to the patent issued to plaintiff and that plaintiff should be compelled to convey the land to defendant upon the payment by him of the full amount of money expended by plaintiff in obtaining the patent, yet if defendant did not ask for relief on such terms and may not

desire it, and is not entitled to the equitable relief he seeks under his answer, and such relief does not come within the purview of said answer, the judgment in his favor cannot stand; but that he may not be deprived of the only relief to which he appears to be entitled, he will be given an opportunity to amend his pleading, and the judgment will be reversed and the cause remanded in order that he may so amend his pleading, if he so elects.

Appeal from Jefferson Circuit Court—*Hon. E. M. Dearing,* Judge.

REVERSED AND REMANDED.

*Clyde Williams* for appellant.

(1)   Defendant not having the equitable title from the Government is not entitled to the legal title which is well vested in plaintiff. Bohall v. Dilla, 114 U. S. 47; Johnson v. Fluetsch, 176 Mo. 463; Wilcox v. Phillips, 199 Mo. 299. (2)   Defendant having no title at all, cannot impeach plaintiff's title in law or equity. Evans v. St. Louis Public Schools, 32 Mo. 27; Jasper County v. Tavis, 76 Mo. 17; Gaillher v. Cudwell, 145 U. S. 363. (3)   The equitable title not having emanated from the Government prior to the legal title, the Statutes of Limitations could not apply.

*Miller & Kleinschmidt* for respondent.

(1)   Respondent is the holder of the equitable title and is entitled to have the legal title vested in him. Johnson v. Fluetsch, 176 Mo. 452; Marshall v. Hill, 246 Mo. 1; Wickersham v. Woodbeck, 57 Mo. 59; Sec. 4764, U. S. Compiled Statutes 1918. (2)   A patent issued through fraud or mistake is inferior to an outstanding equitable title. Sanford v. Sanford, 19 Ore. 1; Railroad Co. v. Felenbaum, 32 Nev. 278, L. R. A. 1918 D, 584; Hill v. Miller, 36 Mo. 182; Wright v. Rutgers, 14 Mo. 585; Martin v. Blankenship, 5 Mo. 346; Hedrick v. Beeler, 110 Mo. 91; Cornelius v. Kessel, 128 U. S. 456; Smith v.

Athern, 34 Cal. 506; Widdicombe v. Childers, 124 U. S.
404. (3) Appellant, having the means of knowledge,
is charged with actual notice of respondent's equities.
Marshall v. Hill, 246 Mo. 1; Johnson v. Fluetsch, 176
Mo. 474; Wilcox v. Philips, 199 Mo. 288; Hedrick v. Ry.
Co., 120 Mo. 516; Thayer v. Spratt, 189 U. S. 346. (4)
Appellant, not having begun this action within one year
after issuance of patent under which she claims, the
one-year Statute of Limitation applies and action is
barred. Sec. 1313, R. S. 1919; Hammond v. Johnson, 93
Mo. 198. (5) Respondent as the actual settler and oc-
cupant of the land had preference right to issuance of
patent. Sec. 4764, U. S. Statutes 1918 (Compact Edi-
tion); Johnson v. Fluetsch, 176 Mo. 452. (6) The can-
cellation of original entry without notice to actual oc-
cupant of land did not destroy equitable rights already
accrued. Perry v. O'Hanlon, 11 Mo. 585; Cornelius v.
Kessel, 128 U. S. 456.

RAGLAND, C.—This suit was commenced as a
statutory action to quiet title to the southwest fourth
of the southwest quarter of Section 3, Township 43,
Range 4, east, in Jefferson County. The petition is con-
ventional, alleging that plaintiff is the owner of the land
in fee simple and claims that title thereto, and that de-
fendant claims some title, interest or estate adverse to
plaintiff, and praying the court to ascertain and de-
termine the title, estate and interest of the parties res-
pectively.

The answer denies generally the allegations of the
petition and sets up affirmative defenses as follows:

"Defendant further answering said petition states
that the right or claim of plaintiff alleged in said pe-
tition did not accrue within one year next before the
filing of said petition and is therefore barred by the
Statute of Limitations.

"Further answering said petition defendant states
that his remote grantor, one Edmond F. Frost, entered
the real estate described in plaintiff's petition on the

16th day of March, 1867, by Certificate of Purchase No.
4853 duly issued to him by the United States Land Of-
fice; that said Edmond F. Frost, immediately after said
entry, took possession of said real estate, and thereafter
by warranty deed sold and conveyed the same to one
Adolph Weber, and that by several *mesne* conveyances
said real estate has been conveyed to and is now owned
and occupied by this defendant; the said real estate,
continuously since said entry by Edmond F. Frost, has
been occupied by and in the possession of said Frost and
his grantees and successors in title, including this de-
fendant; that on the 16th day of October, 1916, Patent
No. 548,999 was erroneously issued by the United States
of America to one Edwin L. White, who is a brother and
the immediate grantor of plaintiff herein; that on the
24th day of July, 1916, the date of the filing of the ap-
plication by said White under which said Patent No.
548,999 was issued, the defendant was the owner and in
possession of the real estate described in plaintiff's pe-
tition herein and in said patent issued to White; that
the defendant paid a valuable consideration for said
real estate and has paid all taxes levied against the
same; and that at the time said application for said pat-
ent was made by said White the defendant occupied and
was in possession and control of said real estate, having
made valuable improvements thereon, all of which said
White then knew or by the exercise of ordinary diligence
could have known, but notwithstanding his knowledge
of said facts the said White did wilfully, knowingly,
falsely and fraudulently represent to the officers of the
United States Land Office that said real estate was wild
and vacant timber land uninhabited and not in the pos-
session of anyone, and not claimed by anyone as an ac-
tual settler or otherwise other than the above named
Edwin L. White; and the said officers of the United
States Land Office, relying on said false and fraudulent
representations of said White and not being cognizant
of the existence of the prior claims and equities of de-

fendant in and to said real estate, approved said application and caused said patent to White to be issued without notifying defendant that said application had been filed and without his being made a party to the proceedings under which said application was approved and said patent issued.

"Defendant further states that he is the only person to whom said patent could have been legally and rightfully issued and that the real estate described therein, in equity and good conscience, belongs to him; that plaintiff obtained from said Edwin L. White a warranty deed to said real estate with full knowledge and notice of defendant's prior claims, rights and equities, and is and should be declared in law a trustee of the defendant, who is actually entitled to the beneficial enjoyment of said real estate.

"Wherefore defendant prays that plaintiff be divested of all title acquired by her by virtue of said patent and warranty deed in and to said described real estate, and that the title thereto in fee be vested in defendant, and for such other and further relief, orders and judgments as to the court may seem proper."

The reply is a general denial of the allegations of new matter.

Plaintiff offered in evidence in support of her title, a patent from the United States to Edwin L. White, dated October 6, 1916, and a warranty deed from White to herself, dated March 21, 1917, and then rested.

In support of his claim of title, the defendant introduced in evidence: (1) An entry appearing in the Book of Original Entry on file in the Recorder's office in Jefferson County as follows: "Township No. 43 North, Range No. 4 East, 5 P. M. District of Springfield, Mo. S. W. ¼ of S. W. ¼ Section 3, Township 43 N. Range 4 E., 40 acres Purchase Money $7.00—Purchaser Edmund F. Frost—Date of Sale March 16, 1867—Number of receipt and certificate of Purchase 4853. Hd. canceled Jan. 21, 1876;" (2) warranty deed from

Edmond L. Frost and wife to Adolf Weber, dated March 16, 1868, and recorded March 26, 1868; (3) warranty deed from Adolf Weber and wife to Benedict Weidner, dated March 25, 1868, and recorded March 26, 1868; (4) a deed from the heirs and devisees of Weidner to Jeremiah Howald, dated February 23, 1894, and record-ed April 2, 1894; (5) warranty deed from Howald to Frank Weber, dated September 1, 1897, and duly recorded; and (.6) the will of Frank Weber, deceased, and deeds from certain of his devisees to the defendant, bearing dates in the year 1917—all of the above instruments purporting to severally pass title to the land in controversy.

In addition to the above, defendant introduced evidence tending to show: Benedict Weidner and his successive grantees, down to and including defendant, paid state and county taxes assessed against the land in controversy for the years 1869 to 1919 inclusive, excepting the years 1872, 1887, 1891, 1892, 1913 and 1916. They no doubt paid the taxes for these years also, but the defendant was unable to produce the receipts. The land was covered with timber and brush and lay out as wild land until 1907, when defendant's father, Frank Weber, who lived on a farm adjoining it, enclosed it with a fence consisting of one or two strands of wire, stapled for the most part to trees. In the early part of 1916 Weber had a hog-proof wire fence put around the land and the brush cut off of about three acres of it. No other improvements were ever made; no one ever lived on the land; none of it was ever cultivated; and no use whatever was made of it, except to take wood from it, until 1907. After that time it was used for a pasture by the Webers, father and son.

Defendant's evidence further disclosed that the Book of Original Entry from which was offered the record entry of the land in controversy, as heretofore set out, was not filed in the Recorder's office of Jefferson County until sometime subsequent to May 25, 1916; that

prior thereto there had been kept in that office an un-
official and uncertified plat book in which appeared the
entry by Frost without any indication that the entry
had ever been cancelled.

Defendant called plaintiff as a witness. She tes-
tifies that Edwin L. White, the patentee was her brother;
that she gave him the money with which to purchase the
land for her, because she was unable to go out and look
at it; and that he made application for the patent, paid
the purchase money of $1.25 per acre and took the patent
in his own name and then conveyed the land to her.

The defendant also put in evidence the affidavits of
White and his two witnesses respectively which he filed
in connection with his application to purchase the land.
The pertinent parts of these affidavits are to the effect
that the land was not claimed by any one as an actual
settler or otherwise, other than White.

In rebuttal plaintiff put in evidence exemplified
copies of documents as follows:

"Homestead
"Application,
No. 4853
    "Land Office at Boonville, Mo.

                                            Mar. 16, 1867.
    "I, Edmund Francis Frost of Jefferson Co., Mo., do hereby apply
to enter, under the provisions of the Act of Congress approved May
20, 1862, entitled, 'An act to secure homesteads to actual settlers on
the public domain,' the Southwest ¼ of Southwest ¼ of Section
3 in Township 43 of Range 4 East containing 40 acres.
                                   "Signed EDMUND F. FROST."

                     "Land Office at Boonville, Mo.
"2504700                               March 16, 1867.
    "I, John F. Wielandy register of the land office, do hereby
certify that the above application is for surveyed lands of the
class which the applicant is legally entitled to enter under the
Homestead Act of May 20, 1862, and that there is no prior, valid,
adverse right to the same.
                       "JOHN F. WIELANDY, Register."

259 Mo.—36

Baxter v. Weber.

"Homestead

"Receiver's Office, Boonville, Mo.,          March 16, 1867.
    "Receiver's receipt,                    Application,
No. 4853.                          No. 4853.

    "Received of Francis Frost the sum of seven dollars ......
cents; being the amount of fee and compensation of register and
receiver for the entry of S. W. ¼ of S. W. ¼ of Section 3 in Town-
ship 43 of Range 4 East under the acts of Congress approved May
20, 1862, and March 21, 1864, entitled. 'An act to secure home-
steads to actual settler on the public domain.'

    $7.00                    ED. B. McPHERSON, Receiver,"
·"66

C             Department of the Interior.
"M 'E N H          General Land Office.
              "Washington, D. C., January 21, 1876.
"Register and Receiver,
    "Boonville, Mo.
"Gentlemen:

    "Replying to your letter of the 17th Dec. ulto in which you
state that the following-named claimants under the homestead
law have permitted the period of seven years, allowed by law for
making the required proof of settlement and cultivation, to ex-
pire without making such proof, that they have been notified by
you in accordance with my circular of December 20, 1873, and
that they have failed to show cause why their claim should not
be declared forfeited, and their entries canceled.

    "I have to state that as the parties have failed to comply with
the requirements of the law. their entries have this day been can-
celed on our files and records.

    "You will, therefore, note the cancellations on your records,
and thereafter promptly advise us of the fact.

    "The cases referred to in the foregoing as canceled are the
following, viz: . . .

    "No. 4853      EDMUND F. FROST. . , .

                      "Very respectfully,
                         "L. K. LIPPINCOTT,
                         "Acting Commissioner."

    The suit was filed July 1, 1919.

    The court found that the defendant had been for
many years an actual settler on the land in controversy;
that he paid a valuable consideration therefor; that he
paid taxes and made improvements thereon in good

faith and that he was the equitable owner of the land at the time of the issuance of the patent and had a preference right to have the patent issued to him. The court further found that the defendant was not notified of the application for the patent, and that the same was erroneously issued to Edwin L. White through fraud or mistake. The court thereupon by its decree divested plaintiff of title and vested same in defendant upon the payment to plaintiff of the sum of $50. From such judgment plaintiff appeals. For the sake of clarity appellant and respondent will continue to be designated as plaintiff and defendant respectively in the opinion which follows.

Plaintiff alleges and her proof indisputably shows that she has the title in fee simple to the land in controversy. Defendant, however, asserts: (1) that he is the owner of the equitable title which emanated from the Government more than twenty years before the issuance of the patent to plaintiff's grantor who took with notice of that fact, and that plaintiff, who stands in her grantor's shoes under the facts in proof, acquired, therefore, merely the legal title which she holds in trust for defendant; and (2) that plaintiff's action is barred by Section 1313, Revised Statutes 1919 (Sec. 1885, R. S. 1909), because not commenced within one year after the issuance of the patent.

I. Defendant's principal contention, as disclosed by his pleading, is bottomed on the doctrine that where public lands of the United States, subject to entry, are purchased and paid for and nothing remains to be done on the part of the entryman in order to entitle him to a patent, he has an equitable title superior to any that may be obtained by a subsequent purchaser who takes with notice, and such subsequent purchaser, if he obtains the legal title, may be compelled to convey it to the equitable owner. [Cornelius v. Kessel, 128 U. S. 456; Johnson v. Fluetsch, 176 Mo. 452.] But it is very clear that defendant's claim

*Equitable Title.*

of equitable title can find no support in the doctrine just stated, because the facts do not warrant it. Whatever title he has was derived solely through Frost who made a homestead entry in 1867. Frost paid nothing for the land; by his entry he acquired at most an inchoate title to be perfected by a compliance with the homestead law with respect to residence and cultivation (Knapp v. Lumber Co., 237 U. S. 162); and until such compliance he had no interest, equitable or otherwise, that he could convey. [Bailey v. Sanders, 228 U. S. 603.] He took none of the steps required by law to earn a patent; on the contrary he attempted to alien the land just a year after he made the entry. His deed conveyed nothing. [Lindsey v. Veasy, 62 Ala. 421.]

II. On January 21, 1876, Frost's homestead entry was cancelled because of his failure to comply with the

Limitations.

law. From that time on to the issuance of the patent to White, there was no outstanding equitable right or title in any one, hence the Statute of Limitations invoked by defendant is without application.

III. Defendant claims that under Section 2, Chapter 344, p. 418, 30 U. S. Stats. at Large, he

Actual Settler: Preference.

was entitled to a patent to the land in controversy at the time it was issued to White. That section reads as follows:

"Sec. 2. That all public lands within the State of Missouri shall hereafter be subject to disposal at private sale in the manner now provided by law for the sale of lands which have been publicly offered for sale, whether such lands have ever been offered at public sale or not: Provided, That the actual settler shall have a preference right, under such rules and regulations as the Secretary of the Interior may prescribe."

From this it appears that defendant had, not a right to a patent, but a preference right to buy the land at private sale, if he was an "actual settler." He did

not reside on the land, but the land had been fenced, partially cleared and incorporated into the farm upon which he resided, by his immediate grantor. He had paid a valuable consideration for the land and was an actual occupant in the honest belief that he had the title in fee. While he may not have been an actual settler within the meaning of the homestead and preemption laws, we are clearly of the opinion that he was within the equity of the statute just quoted.

IV. Following the enactment of the statute, the Secretary of the Interior promulgated a rule which provided: "In all applications to purchase land at private sale, . . . the applicant must furnish a duly corroborated affidavit showing that there is no one other than himself claiming said land as an actual settler." [27 L. D. 68.] In compliance with this rule, White made affidavit, in which he was corroborated by two witnesses, that the land was "not claimed by any one as an actual settler or otherwise, other than himself." Notwithstanding his affidavit, he had notice of respondent's claim as a matter of law. The land had been enclosed and used as a part of the farm that had been continuously occupied by respondent and his immediate grantor for nearly twenty years. Their possession was open, visible and notorious and challenged inquiry on the part of an intending purchaser. In view of the affidavit he was required to make in connection with his application to purchase the land, it was particularly incumbent upon White to have made inquiry as to the nature of the occupant's claim. Had he done so, there is no question but that he would have received full information with respect to it. As he was acting entirely for plaintiff in the purchase of the land his knowledge and acts were hers.

*Possession as Notice.*

V. White's affidavit, whether intentionally or ignorantly made, operated as a fraud on defendant, in depriving him of the right to buy the land in preference to

others, when he became aware that he had no title. It should be held on the facts in proof, therefore, that in

**Relief: Scope of Pleading.** equity and good conscience the land is still subject to such right in the hands of plaintiff, and that she should be compelled to convey it to defendant upon the payment by him of the full amount of money expended by her in effecting its purchase. Defendant, however, has not asked this relief and may not desire it. As already pointed out he is not entitled to the equitable relief he seeks under his answer which is in effect a bill in equity; nor to any relief within the purview of that pleading. And of course he cannot be awarded a relief not embraced within the scope of the pleadings. For these reasons the judgment *nisi* cannot stand. In order, however, that defendant may not be deprived of the only relief to which he appears to be entitled, he will be given an opportunity to amend his pleading, if he so elects. Accordingly the judgment is reversed and the cause remanded for a new trial. *Small, C.,* concurs; *Brown C.,* absent.

PER CURIAM:—The foregoing opinion of RAGLAND, C., is hereby adopted as the opinion of Court in Banc. All of the judges concur except *Graves* and *Elder, JJ.,* who dissent; *David E. Blair, J.,* concurs in the result.